UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CORRINE MICHEL JOHNSON and JOHNATHAN SHANE JOHNSON, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:15-CV-1939-B |
| SAFECO INSURANCE COMPANY OF INDIANA, | § § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Safeco Insurance Company of Indiana's Motion for Summary Judgment. Doc. 34. For the following reasons, the Court **GRANTS in part and DENIES in part** Safeco's Motion.

## I.

## BACKGROUND

This is an insurance coverage dispute. The basic facts are not much at issue. Plaintiffs owned a home in Richardson, Texas. Doc. 1, Ex. A, Pls.' Orig. Pet. ¶ 11. They insured it with a Texas Homeowner's Policy (Policy) issued by Safeco. Doc. 45, Pls.' Resp. to Def.'s Mot. for Summ. J. ¶ 6 [hereinafter Pls.' Resp.]. The Policy was in effect from December 14, 2013, through December 14, 2014. *Id.*

Towards the end of March 2014, Plaintiffs' washing machine overflowed and flooded parts of their home. *Id.* ¶ 7. "Plaintiffs dried the home to the best of their ability using towels, a wet vacuum, and rented high speed water remediation fans which ran for three days." *Id.* Plaintiffs

believed that their actions would mitigate any damage. *See id.* ¶ 8. It did not.[1] *Id.*

As a result, Plaintiffs considered repairing the water damage and, while they were at it, making some improvements to the property. *Id.* To that end, they spoke with a few architects about plans and even applied for a home improvement loan. *Id.* But in the end, they decided against repair and opted instead to sell the house. *Id.*

Plaintiffs listed the property for sale on July 3, 2014. Doc. 35, Def.'s Br. 4. As part of the listing process, Plaintiffs completed and signed a disclosure notice describing the property's condition. *Id.* at 4–5 (citing Doc. 36, Def.'s App. Supp. Def.'s Mot. for Summ. J. 160:4–161:9 [hereinafter Def.'s App]). It did not mention any water damage. *Id.* (citing Doc. 36, Def.'s App. 160:4–15, 179–83, 219:16–220:3). Nevertheless, Plaintiffs entered into a contract to sell the home to Shaddock Caldwell Builder & Developers for $219,300.00 on July 14, 2014. *Id.*; Doc. 45, Pls.' Resp. ¶ 9. The transaction closed on July 28, 2014. Doc. 35, Def.'s Br. 5.

But three days before, on July 25, 2014, Plaintiffs—who continued to live at the house for several months after selling it—filed a claim[2] with Safeco for water damage from the March washing machine overflow. Doc. 45, Pls.' Resp. ¶¶ 10–11. That claim eventually gave rise to this suit.

Safeco contends—and Plaintiffs do not contest—that Plaintiffs never informed it that their home had been sold and "notified Shaddock Caldwell that they intended to remove a sign identifying

---

[1]The extent of damage to Plaintiffs' home is the subject of some debate here. *See id.* ¶¶ 8–10; Doc. 35, Def.'s Br. Supp. Mot. for Summ. J. 4–6 [hereinafter Def.'s Br.]. That the parties disagree over how much damage there was and how it impacted the home's value is, as will soon become apparent, key here. But parsing out the exact details of that damage is not. So the Court declines to rehash an itemized list of things harmed by the washing machine's overflow.

[2]Plaintiffs actually filed two claims but only one is at issue here, so the Court addresses it alone. *See* Doc. 35, Def.'s Br. 5 n.1.

the [p]roperty as a lot for sale before insurance adjusters arrived." Doc. 35, Def.'s Br. 6 (citing Doc. 36, Def.'s App. 190:7–191:3, 193:13–16, 207). Safeco, thus operating on the assumption that Plaintiffs still owned the home, inspected and adjusted parts of Plaintiffs' claim for property damage. *Id.*; Doc. 45, Pls.' Resp. ¶ 10. After applying the Policy's deductible of $1,879.00, Safeco paid Plaintiffs $176.51. Doc. 35, Def.'s Br. 6 (citing Doc. 36, Def.'s App. 2); Doc. 45, Pls.' Resp. ¶ 11.

Plaintiffs' claim also involved some personal property damage by the washing machine overflow. Doc. 35, Def.'s Br. 6. Safeco "sent a letter to Plaintiffs enclosing payment for certain personal property items and attaching an inventory identifying [other] items of property for which [it] needed additional information" before payment could be issued." *Id.* at 6 (citing Doc. 36, Def.'s App. 122–26). Safeco maintains that Plaintiffs never provided the requested information, and "[a]fter several months of requests by Safeco for Plaintiffs to provide additional information went ignored, Safeco closed the claim." *Id.* (citing Doc. 36, Def.'s App. 4–5, 130–32, 167:11–22, 168:24–169:3). Plaintiffs, by contrast, opine that Safeco had all the information it needed either in possession or available for inspection, but just chose to underpay for their personal property. Doc. 45, Pls.' Resp. ¶ 12.

At any rate, Plaintiffs felt that Safeco "grossly underpaid" them for their claim. *Id.* So they retained counsel and invoked appraisal. *Id.* (citing Doc. 45-1, Pls.' App. Supp. Pls.' Resp. 187–89 [hereinafter Pls.' App.]). Safeco, in turn, designated an appraiser. *Id.* But before the dispute was resolved by appraisal, Safeco learned that Plaintiffs had sold their home. *Id.* For that reason, Safeco concluded that appraisal was unnecessary. *Id.* (citing Doc. 45-1, Pls.' App. 190). Safeco concludes even more so now that Shaddock Caldwell has demolished the house. *See* Doc. 35, Def.'s Br. 8.

Plaintiffs concluded otherwise, and on that basis filed suit in Texas state court asserting

- 3 -

claims against Safeco for fraud, breach of contract, violations of chapters 541 and 542 of the Texas Insurance Code, and breach of the duty of good faith and fair dealing. Doc. 1, Ex. A, Pls.' Orig. Pet. ¶¶ 30–32, 40–53. Safeco removed the case to federal court on diversity grounds.[3] Doc. 1, Notice of Removal. Then it moved for summary judgment on all of Plaintiffs' claims. Doc. 34, Def.'s Mot. for Summ. J. Plaintiffs responded. Doc. 45, Pls.' Resp. Safeco replied in turn. Doc. 49, Def.'s Reply Opp'n Pls.' Resp [hereinafter Def.'s Reply]. The Motion is therefore ready for review.

## II.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007). And a fact "is 'material' if its resolution could affect the outcome of the action." *Id.*

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)

---

[3]Plaintiffs initially brought suit against both Safeco and Safeco's adjuster on Plaintiffs' claims, Lisa Seutter. *See* Doc. 1, Ex. A., Pls.' Orig. Pet. Safeco, however, contended that Plaintiffs improperly joined Seutter to defeat diversity jurisdiction. Doc. 1, Notice of Removal ¶ 5. Plaintiffs disagreed and moved to remand the case to state court. *See* Doc. 6, Mot. Remand. But soon after, Plaintiffs withdrew their Motion to Remand (*see* Docs. 10–12) and voluntarily dismissed their claims against Seutter. *See* Doc. 14, Notice of Dismissal. With all of that in mind, the Court determines that Safeco's removal was proper and concludes that it has jurisdiction over this case.

(internal quotation marks omitted). But if the non-movant ultimately bears the burden of proof at trial, the movant may satisfy its burden just by pointing to the absence of evidence supporting the non-movant's case. *Id.* at 322–23.

If the movant meets that burden, then it falls to the non-movant to "show with significant probative evidence that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (internal quotation marks omitted) (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). And significant probative evidence is just that: significant. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). "[M]etaphysical doubt as to material facts," "conclusory allegations," "unsubstantiated assertions," or a mere "scintilla of evidence" will not do. *Id.* (internal citations and quotation marks omitted). Rather, "the non-movant must go beyond the pleadings and present specific facts indicating a genuine issue for trial." *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (citing *Celotex*, 477 U.S. at 324).

To be sure, the court views evidence in the light most favorable to the non-movant when determining whether a genuine issue exists. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). The presence of cross-motions does not change this approach: The court will "review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). But it need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). Simply put, the non-movant must "identify specific evidence in the record" and "articulate the precise manner in which that evidence supports

[its] claim." *Id.* If it cannot, then the court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

There are, as mentioned above, a number of claims at play here. But as laid out below, most more or less turn on a single question: Did Safeco breach the terms of the Policy when it denied Plaintiffs' claim?

A.   *The Contractual Claim: Did the Policy Cover the Damages to Plaintiffs' Home?*

To recap, Plaintiffs' washing machine overflowed and flooded parts of their home. They believed that their initial efforts to contain the water damage were successful but, before long, realized that they were not. After weighing their options, Plaintiffs decided to sell the house rather than repair the damage. The house sold in a matter of weeks. But a few days after the closing, Plaintiffs, who continued to live in the house for a few months until Shaddock Caldwell demolished it, filed a claim with Safeco for water damage from the washing machine overflow.

Safeco now argues that Plaintiffs' breach of contract claim should be dismissed for two reasons. First, Safeco contends that Plaintiffs have no insurable interest because they sold the house. Doc. 35, Def.'s Br. 8. Second, Safeco maintains that, as a result of the sale and demolition, Plaintiffs suffered no actual loss for which the Policy could indemnify them. *Id.* Plaintiffs respond that whether they sold the house is irrelevant—they had an insurable interest at the time of loss and Safeco was obligated to indemnify them for the cost of repairing the water damage regardless of whether they actually repaired it. *See* Doc. 45, Pls.' Resp. ¶¶ 19–24, 27–33.

1.   Did Plaintiffs Have An Insurable Interest?

As to Safeco's first argument, "[i]nsurance policies are contracts." *Harken Expl. Co. v. Sphere*

*Drake Ins. PLC*, 261 F.3d 466, 471 n.3 (5th Cir. 2001). And "[i]n diversity cases such as this one, [courts] apply state law rules of construction. Therefore, Texas's rules of contract interpretation control." *Id.* (internal citations omitted).

Under Texas law, "[a] party must have an insurable interest in the insured property to recover under an insurance policy." *Jones v. Tex. Pac. Indem. Co.*, 853 S.W.2d 791, 794 (Tex. App.—Dallas 1993, no writ). "A claimant has the burden to prove an insurable interest, which is a question of law." *Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651, 660 (Tex. App.—Texarkana 2013, no pet.) (citing *id.*). "'An insurable interest exists when the assured derives pecuniary benefit or advantage by the preservation and continued existence of the property or would sustain pecuniary loss from its destruction.'" *Id.* (quoting *Smith v. Eagle Star Ins. Co.*, 370 S.W.2d 448, 450 (Tex. 1963)). Put another way, "[i]f a claimant cannot suffer any pecuniary loss or derive any benefit from the property, he has no insurable interest." *Jones*, 853 S.W.2d at 794.

Therein lies the crux of Safeco's theory: Plaintiffs sold their house—which is now demolished—so they don't stand to gain or lose anything from it. *See* Doc. 35, Def.'s Br. 8. But as Plaintiffs point out in their Response, Safeco misses the mark because Plaintiffs' insurable interest is not measured as of the date they filed their claim or as of now. Doc. 45, Pls.' Resp. ¶¶ 28–33.

A property insurance policy is an indemnity contract "for the insurable interest possessed by the insured "*at the time of issuance of the policy, and also at the time of the loss.*" *Highlands Ins. Co. v. City of Galv.*, 721 S.W.2d 469, 471 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (emphasis added). The Policy itself says so. Doc. 36, Def.'s App. 44 (explaining that Safeco "will not be liable in any one loss . . . to the insured for more than the amount of the insured's interest at the time of loss"). Plaintiffs undisputedly owned the house when the Policy was issued and when the washing

machine overflowed and caused water damage. Plaintiffs have therefore met their burden of proving an insurable interest—apparent foot dragging in filing their claim with Safeco does not change that. *See id*; *Highlands Ins.*, 721 S.W.2d at 471. Safeco also argues that Plaintiffs' insurable interest was extinguished when they sold their home because the sale proceeds made them whole. *See* Doc. 49, Def.'s Br. 7–9. That angle, however, tangles together with Safeco's second argument.[4] The Court will thus consider them in tandem. Accordingly, the Court rejects Safeco's first ground for dismissing Plaintiffs' breach of contract claim.

### 2.   Did Plaintiffs Suffer A Pecuniary Loss?

Turning to the second, Safeco contends that Plaintiffs suffered no loss from which the Policy could indemnify them because they sold the house. *Id.* at 8. "An insurance contract is by definition a contract of indemnity, under which an insurer cannot be required to pay its insured more than the amount of his actual loss." *State Farm Fire & Cas. Co. v. Griffin*, 888 S.W.2d 150, 156 (Tex. App.—Houston [1st Dist.] 1994, no writ). The Texas Supreme Court has clarified "that there is no pecuniary loss when the loss has been made good out of a related transaction." *Leggio v. Millers Nat'l Ins. Co.*, 398 S.W.2d 607, 610 (Tex. App.—Tyler 1965, writ ref'd n.r.e.) (citing *Paramount Fire Ins. Co. v. Aetna Cas. & Surety Co.*, 353 S.W.2d 841, 844 (Tex. 1962)). In other words, courts should "analyze the reality of a loss" by "'look[ing] to the substance of the whole transaction rather than to seek a metaphysical hypothesis upon which to justify a loss that is no loss.'" *Chambless*, 123 F. Supp.

---

[4]Safeco argues that Plaintiffs had no insurable interest because they suffered no pecuniary loss. *See* Doc. Doc. 49, Def.'s Reply 3. But that position contradicts how courts in this District have interpreted Texas case law on the issue. *See Chambless v. Travelers Lloyds of Tex. Ins. Co.*, 123 F. Supp. 2d 1028, 1033 (N.D. Tex. 2000). There are three basic questions at play here: (1) was there an insurable interest; (2) was there a pecuniary loss; and (3) if there was a pecuniary loss, was it negated by a related transaction? *Id.* Safeco tries to condense all three into a single inquiry. The Court refuses to do so and instead considers each point separately.

2d at 1031 (quoting *Paramount*, 353 S.W.2d at 844). In so doing, courts should aim to prevent windfall recoveries in which insureds who ultimately suffer no pecuniary loss are still entitled to recover under their insurance polices. *See Paramount*, 353 S.W.2d at 844.

Safeco maintains that Plaintiffs are after a windfall recovery. Doc. 35, Def.'s Br. 8. In particular, Safeco says that Plaintiffs suffered no loss because Safeco adjusted claims for the minor repairs that Plaintiffs made and there is no evidence of the house's diminution in value at the time of sale. *Id.* at 8–9. In short, Safeco paid for Plaintiffs' out-of-pocket costs and Plaintiffs sold the house for what it would have sold for anyways, so any additional recovery would constitute a windfall. *Id.*

Plaintiffs, for their part, counter that Safeco misapprehends the issue. *See* Doc. 145, Pls.' Resp. ¶ 19. More specifically, Plaintiffs contend that "per the terms of the Policy and Texas law, the actual cash value of the cost of repairs is the proper measure of damages under the facts of this case." *Id.* It makes no difference that Plaintiffs sold the house—Safeco owed them for the repairs but did not pay. *See id.* ¶¶ 19–24. Therefore, Plaintiffs conclude, a loss exists that merits indemnity. *Id.*

At bottom, the fate of Plaintiffs' breach of contract claim turns on whether Plaintiffs suffered a pecuniary loss. Said differently, would Plaintiffs' bottom line have been the same had they not sold the house and Safeco paid whatever claim would normally have been due under the Policy. And to determine whether Plaintiffs suffered a pecuniary loss under Texas law, the Court must look to the terms of the Policy itself: "The liability of the insurer is based upon the contract, and in an action for damage brought upon a lawful contract of insurance, the provisions of the contract govern the measure of the insured's recovery." *Griffin*, 888 S.W.2d at 156.

      i.    *Insurance policy interpretation under Texas law*

Under Texas law, insurance policies are subject to the same rules of interpretation and

construction applicable to contracts generally. *Progressive Cty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003). That means the Court's "primary concern in construing a written contract 'is to ascertain the true intent of the parties as expressed in the instrument.'" *Fed. Ins. Co. v. Northfield Ins. Co.*, 837 F.3d 548, 552 (5th Cir. 2016) (quoting *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)).

To that end, the Court "evaluates the contract based on its plain meaning, determining what the words of the contract say the parties agreed to do." *Tetra Tech., Inc. v. Cont'l Ins. Co.*, 814 F.3d 733, 746 (5th Cir. 2016) (internal quotation marks and citations omitted). The Court "'must examine the policy as a whole, seeking to harmonize all provisions and render none meaningless.'" *Id.* (quoting *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015)). Any "[a]mbiguous language—in particular, exclusionary language—must be construed 'strictly against the insurer and liberally in favor of the insured.'" *Id.* at 747 (quoting *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 563–64 (5th Cir. 2010)).

ii.     *The terms of the Policy*

The Policy[5] provides in pertinent part:

### SECTION I—PERILS INSURED AGAINST

**COVERAGE A—DWELLING**

. . .

**COVERAGE C—PERSONAL PROPERTY**

. . .

### SECTION I—PROPERTY CONDITIONS

. . .

6. **Loss Settlement**. Covered property losses are settled as follows:

---

[5] The following terms are gathered from the Policy, *i.e.*, Plaintiffs' Texas Homeowner's Policy with Safeco. Doc. 36 Def.'s App. 36–58, Ex. A-1, Policy No. OY6615588.

a. **Replacement Cost**. Property under Coverage A or Coverage B at *replacement cost*, not including wood fences and structures that are not buildings, subject to the following:

(1) We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

(a) the limit of liability under the policy applying to Coverage A or B;

(b) the *replacement cost* of that part of the damaged building for equivalent construction and use on the same premises as determined shortly following the loss;

(c) the full amount actually and necessarily spent to repair or replace the damaged building as determined shortly following the loss;

(d) our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

. . .

(3) If the cost to repair or replace is $1,000 or more, we will pay the difference between the *actual cash value* and *replacement cost* only after the damaged or destroyed property has actually been repaired or replaced.

. . .

(4) You may disregard the *replacement cost* loss settlement provisions and make claim under this policy for loss or damage to buildings on an *actual cash value* basis but not exceeding the smallest of the following amounts:

(a) the applicable limit of liability;
(b) the direct financial loss you incur; or
(c) our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

You may make a claim for loss on an *actual cash value* basis and then make a claim under *replacement cost* after you have repaired or replaced the property.

. . .

### POLICY DEFINITIONS

. . .

2. **"Actual Cash Value"**

a. When the damage to the property is economically repairable, *actual cash value* means the cost of repairing the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

b. When the loss or damage to the property creates a total loss, *actual cash value* means the market value of property in a used condition equal to that of the destroyed property, if reasonably available on the used market.

- 11 -

     c. Otherwise, *actual cash value* shall mean the market value of new, identical or nearly identical property, less reasonable deduction for wear and tear, deterioration and obsolescence.

     d. When applicable to Personal Property We Cover, *actual cash value* does not include taxes, or any expense unless incurred following the loss.

     iii.     *The Policy's terms are unambiguous: Safeco's liability is limited to either the full amount Plaintiffs actually and necessarily spent to repair the water damage or the direct financial loss Plaintiffs incurred as a result of the water damage*

Plaintiffs' argument for recovery under the Policy is straightforward. Given the facts at hand, Plaintiffs contend, actual cash value is the proper measure of damages. Doc. 45, Pls.' Resp. ¶¶ 19–20. The water damage to Plaintiffs' home was repairable and did not cause a total loss. *Id.* ¶ 20. So under the Policy's definition, "actual cash value" means repair cost here. *Id.* What's more, Plaintiffs continue, "Safeco's obligation to pay the actual cash value of the damaged or destroyed property is not conditioned on the property being repaired." *Id.* ¶ 24. Thus, Safeco owes Plaintiffs for the cost to repair the water damage. *See id.* ¶¶ 22–24.

Safeco's retort is similarly frank: Plaintiffs' recovery is limited by Texas law to the pecuniary loss that they suffered. Doc. 35, Def.'s Br. 8. Under the Policy's terms, that means the direct financial loss that Plaintiffs suffered. *Id.* And Plaintiffs suffered no direct financial loss from the water damage because there was no diminution in market value when they sold their home. *Id.* Therefore, Safeco concludes, Plaintiffs cannot recover. *Id.*

The Court agrees with Safeco as far as Policy interpretation is concerned. The Policy's terms plainly set forth two distinct loss settlement processes. The first, as it applies here, is for property damage to Plaintiffs' house. *See* Doc. 36, Def.'s App. 45. That process allows Plaintiffs to file a claim for either: (1) replacement cost of the damage to the house, but not exceeding the full amount

actually and necessarily spent to repair or replace the damage as determined shortly following the loss; or (2) actual cash value for the loss or damage, but not exceeding the direct financial loss that Plaintiffs incurred. *Id.* The upshot of both options is that Plaintiffs' recovery is limited to their actual, tangible loss. *See id.* The policy goes on to explain that Plaintiffs have the option to "make a claim on an actual cash value basis and the make a claim under replacement cost after you have repaired or replaced the property." *Id.* The second process is for water damage to Plaintiffs' personal property. It provides that Safeco will pay for personal property at actual cash value at the time of loss but not more than the amount required to repair or replace. *Id.*

The main fight here is over the first loss settlement process for property damage to Plaintiffs' home. To support their claim for recovery, Plaintiffs point both to the Policy's definition of "actual cash value" and to the choice to first file a claim on an actual cash value basis and then follow up with a replacement cost claim. Doc. 45, Pls.' Resp. ¶¶ 23–25. If the Policy provides that Safeco will pay for the difference between actual cash value and replacement cost only after the damage property has been repaired, Plaintiffs posit, then it necessarily provides for payments before or irrespective of repair. *Id.* Perhaps.

Yet as Safeco points out, that recovery would still be limited to the lower bound of whichever option Plaintiffs chose, the amount actually and necessarily spent for repairs for replacement cost or Plaintiffs' direct financial loss for actual cash value. *See* Doc. 49, 1–2. In other words, it's conceivable that under some circumstances an insured could recover for property damage without repairing the property. That recovery, however, would be limited to the insured's direct financial loss. *See* Doc. 36, Def.'s App. 45. Plaintiffs themselves concede as much in their Response. Doc. 45, Pls.' Resp. ¶ 23. Thus, the Court concludes that the Policy does not provide Plaintiffs with a blanket entitlement to

recovery absent repair; rather, Plaintiffs' recovery for property damage is limited to either the amount they actually and necessarily spent on repairs to the water damage or their direct financial loss. *See* Doc. 36, Def.'s App. 45.

But given the evidence submitted by the parties to the summary judgment record, the Court concludes that how to figure those amounts is ambiguous here. Both sides agree that Safeco made some initial payment to Plaintiffs for their early efforts to repair the water damage. Doc. 35, Def.'s Br. 6; Doc. 45, Pls.' Resp. ¶ 10 (citing Doc. 45-1, Pls.' App. 178–86). So the real task is determining the actual cash value of Plaintiffs' claim by calculating the direct financial loss they suffered from the water damage. And that, as explained above, requires digging into Plaintiffs' sale of their home.

Safeco argues that Plaintiffs suffered no direct financial loss from the water damage because it did not negatively impact the home's sales price. Doc. 35, Def.'s Br. 8–9. Said differently, Safeco claims that Plaintiffs sold their home for no less with water damage than they would have without it. *Id.* Plaintiffs, however, contest that they accepted an arguably lowball offer due to their concern about the home's condition, especially the water damage. Doc. 45, Pls.' Resp. ¶ 33 (citing Doc. 45-1, Pls.' App. 160). Safeco concedes that Plaintiffs sold the house for less than its fair market value.[6] Doc. 45, Def.'s Br. 9. But that lower than average sales price, Safeco continues, is not the result of water damage; rather, it stemmed from the buyer Shaddock Caldwell's assumption of closing costs normally born by the seller. *Id.* What's more, Safeco goes on, Plaintiffs continued to live in the house rent free for months after they sold it. *Id.* So factoring those in, Safeco concludes, Plaintiffs actually

---

[6]The Court realizes that Plaintiffs challenge the source of this valuation, Safeco's expert Jim Goodrich. Safeco similarly challenges Plaintiffs' expert on that point. Yet the Court need not rule on the admissibility of expert testimony to make its point here.

profited from their sale. *Id.*

Based upon the summary judgment record and having considered the parties' arguments, the Court concludes that there is a genuine issue of material fact as to both: (1) whether Plaintiffs suffered a direct financial loss here; and (2) if so, the extent of that loss. And with those issues unresolved, the Court cannot render a decision as to whether Safeco breached its obligation under the Policy to pay Plaintiffs for property damage to their home.

The same goes for Plaintiffs' personal property coverage. Safeco maintains that it closed Plaintiffs' personal property claims because Plaintiffs failed to provide information necessary for Safeco to process those claims. *See* Doc. 35, Def.'s Br. 6. Plaintiffs, by contrast, point out that unlike the home that has been demolished, the personal property items at issue have been and still are available for Safeco's inspection. *See* Doc. 45, Pls.' Resp. ¶ 12 (citing Doc. 145-1, Pls.' App. 169). In essence, Plaintiffs claim that Safeco failed to carry out a reasonable investigation of their personal property despite that property being available for inspection. Doc. 45, Pls.' Resp. ¶ 28. In light of that argument and the evidence presented, the Court similarly finds that there is a genuine fact issue as to whether Safeco breached the Policy as to Plaintiffs' personal property claims.

As to Safeco's argument that Plaintiffs' potential lack of pecuniary loss divests them of an insurable interest, the Court disagrees. That conclusion comports with Texas law and precedent from this District interpreting it. As referenced, there are two basic steps to recover from an insurance policy under Texas law. First, a person must have an insurable interest in the property at issue both when the policy is issued and when the loss occurs. *See Jones*, 853 S.W.2d at 794; *Highlands Ins.*, 721 S.W.2d at 471. Second, if the person has the required insurable interest, then his or her recovery is limited to the amount of his or her pecuniary loss. *See Chambless*, 123 F. Supp. 2d at 1031–34.

- 15 -

Plaintiffs had an insurable interest when the Policy was issued and at the time of loss. But there is a genuine issue of fact as to whether they suffered any pecuniary loss that would entitle them to recovery under the Policy. For that reason, the Court concludes that Safeco failed to meet its burden here and **DENIES** its Motion for Summary with respect to Plaintiffs' breach of contract claim.

B.    *The Extracontractual Claims*

Plaintiffs' breach of contract claim was the lynchpin in their theory of recovery. In addition to that claim, though, Plaintiffs asserted a litany of extracontractual claims. The Court considers each in turn.

1.    Texas Insurance Code

The Court first addresses Plaintiffs' claims against Safeco for violations of chapters 541 and 542 of the Texas Insurance Code. *See* Doc. 1, Ex. A, Pls.' Orig. Pet. ¶¶ 42–51. Safeco argues that it is entitled to summary judgment on all of those claims because the Policy did not cover the damage to Plaintiffs' home and Plaintiffs failed to allege any injury independent of the denial of coverage. Doc. 35, Def.'s Br. 9–11. Plaintiffs say they did suffer injury independent of the denial, and contend that their extracontractual claims should survive because even if Safeco did not breach the Policy, it misrepresented Texas law when it withdrew from the appraisal process. Doc. 45, Pls.' Resp. ¶¶ 25–27.

i.    *Chapter 541*

To recover under Chapter 541 of the Texas Insurance Code, a party must establish that: (1) "the insurer committed one or more of the acts prohibited by Chapter 541"; and (2) those "acts resulted in actual damages to the insured independent of the underlying claim." *Hulcher Servs., Inc. v. Great Am. Ins. Co.*, No. 4:14-cv-231, 2015 WL 3921903, at *11 (E.D. Tex. June 25, 2015) (citing

*Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002) ("There can be no recovery for extracontractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits."))

Plaintiffs assert a slew a violations under Chapter 541. *See* Doc. 1, Ex. A, Pls.' Orig. Pet. ¶¶ 42–46 . Yet they fail to provide any proof of damages independent of the alleged wrongful denial of policy benefits. *Id.* The only real damages Plaintiffs allege are those associated with Safeco's alleged mishandling of their claim. *See id.* ¶¶ 51–61.

Indeed, the crux of Plaintiffs' independent injury claim is the expense of preparing for litigation in this case. Doc. 45, Pls.' Resp. ¶ 34. That is not enough. *See, e.g., Mt. Olive Missionary Baptist Church v. Underwriters at Lloyd's, London*, No. H-16-234, 2016 WL 4494439, at *5 (S.D. Tex. Aug. 26, 2016) (summarizing independent injury requirement). And so the Court concludes that Plaintiffs suffered no injury independent of the alleged wrongful denial of policy benefits. *See Hulcher Servs.*, 2015 WL 3921903, at *11.

There is, however, some authority to suggest that, "to the extent [a] policy affords coverage, extracontractual claims [may] remain viable" even absent independent injury. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010); *see also In re Oil Spill by the Oil Rig DEEPWATER HORIZON in Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2014 WL 5524268, at *14–17 (E.D. La. Oct. 31, 2014) (noting apparent conflict in Fifth Circuit precedent over independent injury requirement when claims are covered by underlying policy). And as explained above, it is unclear from the evidence presented whether the Policy affords coverage under these circumstances. If it does, then Plaintiffs may still have a viable claim. But if it does not, then Plaintiffs' claims under

Chapter 541 should be dismissed because Plaintiffs suffered no independent injury. *See Page*, 315 S.W.3d at 532 (explaining that "when the issue of coverage is resolved in the insurer's favor, extracontractual claims do not survive"). Safeco maintains that the Policy's exact coverage is somewhat irrelevant here because there is a bona fide dispute over coverage—Plaintiffs bore the burden of proof to show that Safeco knew or should have known that it was reasonably clear that the claim was covered. Doc. 35, Def.'s Br. 12.

The Court concludes that it is unclear from the evidence presented how the Policy applies in this context. And that opacity transfer over to Plaintiffs' claims under Chapter 541 of the Insurance Code—the Court just cannot tell whether Plaintiffs' claims were covered or if Safeco had a reasonable basis for denying Plaintiffs' claims. *See Greil v. Geico*, 184 F. Supp. 2d 541, 545 (N.D. Tex. 2002). For that reason, the Court **DENIES** Safeco's Motion as to Plaintiffs' claims under Chapter 541.

          *ii.*       *Chapter 542*

To maintain a claim under Chapter 542 of the Texas Insurance Code, a party must show: (1) "a 'first-party' claim under an insurance policy"; (2) "the insurer's liability for that claim"; and (3) "the insurer's failure to follow one or more sections of the statute with respect to handling that claim." *Hulcher Servs.*, 2015 WL 3921903, at *11 (citing *GuideOne Lloyds Ins. Co. v. First Baptist Church of Bedford*, 268 S.W.3d 822, 830 (Tex. App.—Fort Worth 2008, no pet.)); *see also Weiser-Brown Op. Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 518 (5th Cir. 2015). In other words, liability for the claim is a precondition to liability under Chapter 542. *Wellisch v. Un. Servs. Auto. Ass'n*, 75 S.W.3d 53, 57 n.2 (Tex. App.—San Antonio 2002, pet. denied). As referenced, Safeco's liability under the Policy is unclear at this time. Thus, the Court **DENIES** Safeco's Motion as to

Plaintiffs' claims under Chapter 542.

      2.      <u>Good Faith and Fair Dealing</u>

The Court next addresses Plaintiffs' claim against Safeco for breach of its common law duty of good faith and fair dealing. Doc. 1, Ex. A, Pls.' Orig. Pet. ¶¶ 52–53. Safeco again argues that it is entitled to summary judgment because there was a bona fide dispute about its liability under the Policy. Doc. 35, Def.'s Br. 12. As explained above, however, the Court lacks sufficient evidence from which to conclude that Safeco had a reasonable basis for denying Plaintiffs' claim. *See Greil*, 184 F. Supp. 2d at 545. For that reason, the Court **DENIES** Safeco's Motion as to Plaintiffs' bad faith claims.

      3.      <u>Fraud</u>

Finally, the Court addresses Plaintiffs' fraud claim against Safeco. *See* Doc. 1, Ex. A, Pls.' Orig. Pet. ¶¶ 30–32. Safeco argues that it is entitled to summary judgment for two reasons. Doc. 35, Def.'s Br. 13–15. First, Safeco contends that it did not make a misrepresentation to Plaintiffs. *Id.* at 13. Second, Safeco continues that, even if it had misrepresented something, Plaintiffs did not rely on it. *Id.* at 13–15.

To prevail on their fraud claim, Plaintiffs must have shown that: (1) Safeco or its agents made a material representation that was false; (2) they knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) they intended to induce Plaintiffs to act upon the representation; and (4) Plaintiffs actually and justifiably relied on the misrepresentation and suffered injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). Skipping over the first three elements, the Court agrees with Safeco that Plaintiffs did not rely on Safeco's post-loss statements.

The gist of Plaintiffs' argument is that Safeco and its adjuster misrepresented Texas law to Plaintiffs when they withdrew from the appraisal process. *See* Doc. 35, Pls.' Resp. ¶ 34. As a result, Plaintiffs conclude, they were forced to "file a lawsuit to resolve the value of the loss and obtain coverage." *Id.* That is, to be blunt, not reliance. What's more, the Court agrees with Safeco that post-loss statements likely are not actionable in this context.

While most case law on this point deals with statutory claims under the Texas Deceptive Trade Practices Act or Insurance Code, the causes of actions are largely analogous with respect to reliance. *Compare Ernst & Young*, 51 S.W.3d at 577 (laying out reliance requirement for fraud) *with* Tex. Bus. & Comm. Code § 17.50(a) (setting out reliance requirement under DTPA). And [a]mple case law has held that an insured normally cannot bring a misrepresentation claim for any alleged representations made after a loss." *W. Tex. Agriplex v. Mid-Continent Cas. Co.*, No. 5:03-cv-199-C, 2004 WL 1515122, at *13 (N.D. Tex. July 7, 2004). Therefore, the Court **GRANTS** Safeco's Motion as to Plaintiffs' fraud claim.

## IV.

## CONCLUSION

Based on the foregoing, the Court **GRANTS in part and DENIES in part** Safeco's Motion for Summary Judgment. To that end, the Court **DISMISSES with prejudice** Plaintiffs' fraud claim against Safeco.

SO ORDERED.

SIGNED: March 6, 2017.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE